UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Case No. 1:22-cv-10474 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| IMAGO BIOSCIENCES, INC., DENNIS | : **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| HENNER, PH.D., ROBERT BALTERA, | : **THE SECURITIES EXCHANGE ACT** |
| DINA CHAYA, PH.D., HUGH Y. | : **OF 1934** |
| RIENHOFF, JR., M.D., ENOCH KARIUKI, | : |
| PHARMD., and LAURIE KEATING, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Imago Biosciences, Inc. ("Imago or the "Company") and the members Imago board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Imago by affiliates of Merck & Co., Inc. ("Merck").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on December 12, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed

transaction whereby M-Inspire Merger Sub, Inc. ("Purchaser"), a wholly owned subsidiary of Merck Sharp & Dohme LLC ("Parent"), will merge with and into Imago, with Imago continuing as the surviving corporation and as a wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated November 19, 2022 (the "Merger Agreement"), each Imago common share issued and outstanding will be converted into the right to receive $36.00 in cash per share owned; (the "Merger Consideration"). In accordance with the Merger Agreement, Purchaser commenced a tender offer on December 12, 2022 to acquire all of Imago's outstanding common stock and will expire on January 10, 2023 (the "Tender Offer").

3. Defendants have now asked Imago's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Imago's financial projections relied upon by the Company's financial advisor, Centerview Partners LLC ("Centerview"); and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Centerview. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Imago stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Imago's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Imago common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Dennis Henner, Ph.D. has served as a member of the Board since October 2014.

11.     Individual Defendant Robert Baltera has served as a member of the Board since April 2020.

12.     Individual Defendant Dina Chaya, Ph.D. has served as a member of the Board since March 2019.

13. Individual Defendant Hugh Y. RienHoff, Jr., M.D. has served as a member of the Board since March 2012 and is the Company's Chief Executive Officer.

14. Individual Defendant Enoch Kariuki, Pharm.D. has been a member of the Board since January 2021.

15. Individual Defendant Laurie Keating served as a member of the Board since November 2021.

16. Defendant Imago is incorporated in Delaware and maintains its principal offices at 303 Twin Dolphin Drive, 6th Floor, Redwood City, California 94065.  The Company's common stock trades on the NASDAQ Global Select Market under the symbol "IMGO."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.   The Proposed Transaction**

19. Imago, a clinical stage biopharmaceutical company, discovers and develops small molecule product candidates that target lysine-specific demethylase 1(LSD1), an enzyme that used in the production of blood cells in the bone marrow. Its lead product candidate is bomedemstat, which is in Phase II clinical trials for the treatment of myeloproliferative neoplasms chronic cancers of the bone marrow, such as myelofibrosis, essential thrombocythemia, and polycythemia vera. The Company was incorporated in 2012 and is headquartered in Redwood City, California.

20. On November 21, 2022, Merck and the Company announced the Proposed Transaction:

RAHWAY, N.J. & SOUTH SAN FRANCISCO, Calif.--(BUSINESS WIRE)-- Merck (NYSE: MRK), known as MSD outside the United States and Canada, and Imago BioSciences, Inc. ("Imago") (Nasdaq: IMGO) today announced that the companies have entered into a definitive agreement under which Merck, through a subsidiary, will acquire Imago for $36.00 per share in cash for an approximate total equity value of $1.35 billion.

"We continue to invest in our pipeline with a focus on applying our unique capabilities to unlock the value of breakthrough science for the patients we serve," said Robert M. Davis, president and chief executive officer, Merck. "This acquisition of Imago augments our pipeline and strengthens our presence in the growing field of hematology."

Imago is a clinical stage biopharmaceutical company developing new medicines for the treatment of myeloproliferative neoplasms (MPNs) and other bone marrow diseases. Imago's lead candidate bomedemstat (IMG-7289), an investigational orally available lysine-specific demethylase 1 (LSD1) inhibitor, is currently being evaluated in multiple Phase 2 clinical trials for the treatment of essential thrombocythemia (ET), myelofibrosis (MF), and polycythemia vera (PV), in addition to other indications.

"This milestone is a testament to more than a decade of pioneering research by Imago scientists and the entire Imago team's unwavering dedication to improving the lives of patients," said Dr. Hugh Y. Rienhoff, Jr., Founder and Chief Executive Officer, Imago BioSciences. "This agreement leverages Merck's industry-leading clinical development expertise to maximize the therapeutic potential of bomedemstat while providing important value for shareholders. I would also like to acknowledge with gratitude the early investors – Blackstone Life Sciences, Frazier Healthcare, Omega Funds, Amgen Ventures, and MRL Ventures Fund who placed their faith in Imago beginning in 2014, as well as the outstanding study investigators and their patients who have made the clinical development of bomedemstat possible."

"Evidence indicates that LSD1 plays an important role in the maturation of blood cells in the bone marrow," said Dr. Dean Y. Li, president, Merck Research Laboratories. "We look forward to working with the Imago team to further investigate the potential of bomedemstat for patients with myeloproliferative neoplasms."

Under the terms of the acquisition agreement, Merck, through a subsidiary, will initiate a tender offer to acquire all outstanding

shares of Imago. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Imago's outstanding shares, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions. Upon the successful completion of the tender offer, Merck's acquisition subsidiary will be merged into Imago, and any remaining shares of common stock of Imago will be canceled and converted into the right to receive the same $36 per share price payable in the tender offer. The transaction is expected to close in the first quarter of 2023.

**Myeloproliferative neoplasms**

Myeloproliferative neoplasms are a group of diseases of the bone marrow characterized by excessive production of red blood cells, platelets, or certain white blood cells. Myeloproliferative neoplasms progress over time as the number of extra cells build up in the blood and/or bone marrow. This may lead to bleeding problems, anemia, infection, fatigue, thrombosis or other signs and symptoms. Certain myeloproliferative neoplasms may become acute myeloid leukemia (AML). Myeloproliferative neoplasms include chronic myelogenous leukemia (CML), polycythemia vera, primary myelofibrosis, essential thrombocythemia, chronic neutrophilic leukemia, and chronic eosinophilic leukemia.

**About lysine-specific demethylase 1 (LSD1)**

LSD1, also called KDM1A, discovered in 2004, is a member of a group of epigenetic proteins that regulate gene expression through chemical modifications of proteins, RNA and DNA. LSD1 regulates the maturation of bone marrow stem cells and is essential for the differentiation of progenitor cells into mature megakaryocytes and granulocytes and production of blood cells. Given the role that LSD1 plays in the function of malignant blood cells, targeting LSD1 for the treatment of blood cancers offers a new mechanism for the treatment of diseases associated with high morbidity and mortality.

* * *

**Advisors**
Morgan Stanley & Co. LLC acted as financial advisor to Merck in this transaction and Gibson Dunn & Crutcher LLP as its legal advisors. Centerview Partners LLC acted as financial advisor to Imago and Latham and Watkins LLP as its legal advisors.

\* \* \*

21. It is therefore imperative that Imago's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.     The Materially Incomplete and Misleading Solicitation Statement**

22. On December 12, 2022, Imago filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning the Company's Financial Projections*

23. The Solicitation Statement fails to provide material information concerning financial projections by Imago management and relied upon by Centerview in its analysis. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Centerview with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Imago management provided to the Board and Centerview. Courts have uniformly stated that "projections … are probably

7

among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24. For the Company Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBIT and Unlevered Free Cash Flow, but fails to provide a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

25. When a company discloses non-GAAP financial measures in a Solicitation Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

26. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

27. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

28. The Solicitation Statement also fails to disclose what the internal judgment and assumptions were used to create the Company's risk-adjusted Projections.

*Omissions and/or Material Misrepresentations Concerning Centerview's Financial Analysis*

29. With respect to Centerview's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 13.5% to 15.5%; (ii) the implied terminal value of the Company; (iii) the Company's weighted average cost of capital; (iv) the basis for assuming that the rate of free cash flow would decline 80% year-over-year in perpetuity; (v) the number of fully diluted outstanding shares of Imago as of October 14, 2022; and (vi) the present value of the estimated cost of a $150 million equity raise in 2023 and $100 million equity raise in 2027.

30. With respect to Centerview's *Analyst Price Target Analysis*, the Solicitation Statement fails to disclose: (i) the Wall Street research analysts reviewed; and (ii) the stock price targets published by each analyst.

31. With respect to Centerview's *Premiums Paid Analysis*, the Solicitation Statement fails to disclose: (i) the transactions selected; and (ii) the premiums paid in those transactions.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

32. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

35. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

36. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about

the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

37. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

38. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

39. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

40. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**

**Violations of Section 14(d)(4) of the Exchange Act and
Rule 14d-9 Promulgated Thereunder
(Against All Defendants)**

41. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

42. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

43. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

44. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

45. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

46. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT III**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Imago within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Imago, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Imago, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Imago, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

51. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

  C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  D. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: December 12, 2022       **MELWANI & CHAN LLP**

                   /s *Gloria Kui Melwani*
                   Gloria Kui Melwani (GM5661)
                   1180 Avenue of the Americas, 8th Floor
                   New York, New York 10036
                   Tel: (212) 382-4620
                   Email:  gloria@melwanichan.com

                   *Attorneys for Plaintiff*